# Wytheville

NANCY I. MITCHELL, ADM'X, &C. V. K. B. KENNEDY, ET ALS.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*T. W. Messick* and *Walter H. Scott*, for the plaintiff in error.

*John Paul Jones, Lawrence Koenigsberger* and *A. B. Hutzler,* for the defendants in error.

GREGORY, J., delivered the opinion of the court.

Nancy I. Mitchell, administratrix of her deceased son, Allen Mitchell, complains of a final judgment which directs that a fund of $5,000, derived as a result of his death by the wrongful act of another, be turned over to his surviving widow. The administratrix claims that the fund should be paid to her as a portion of the estate of her decedent.

On September 3, 1934, Allen Mitchell met his death as a result of a collision between an automobile which he was driving and one that was being driven by K. B. Kennedy. Nancy I. Mitchell was appointed administratrix of the estate of her deceased son for the purpose of instituting an action against Kennedy to recover for his death. An action was brought and a compromise settlement was effected for the sum of $5,000, which, after approval by the court, was paid by Kennedy. A question arose as to who was entitled to this fund. The court directed that it be deposited in bank until the question could be determined and ordered the administratrix to file a petition seeking the advice of the court as to the disposition of the fund. This was done and all parties in interest were made defendants and they filed their answers. The question finally resolved itself into a contest between the mother of the deceased, as administratrix, on the one hand and the surviving widow on the other.

In September, 1933, Allen Mitchell had married Mary Cumberland, who was then sixteen years of age. At the time of the death of Allen, he and his wife were living separate and apart. She claimed that Allen had deserted her in June, 1934, while the administratrix claimed that Mary had deserted Allen on May 25, 1934. The administratrix invoked Code, section 5123, as amended by Acts 1930, ch. 141, as depriving Mary of any interest in said

fund. That section is as follows: "If a wife deserts or abandons her husband and such desertion or abandonment continues until his death, she shall be barred of all interest in his estate as tenant by dower, distributee or otherwise."

The administratrix also invoked Code, section 5277, which provides, in part, that if "either husband or wife leave the other and live in adultery, he or she shall have no part of the personal estate as to which the other consort dies intestate, unless before such death, they were reconciled and lived together."

The evidence fails to support the charge that Mary committed adultery or lived in adultery; therefore section 5277 has no application to the case.

Code, section 5787, as amended by Acts 1920, ch. 25, provides how a fund derived by reason of death by wrongful act shall be distributed. It, in part, is as follows: "The jury * * * may direct in what proportion they [damages] shall be distributed to the surviving widow or husband and children and grandchildren of the deceased, or if there be none such, then to the parents, * * * of the deceased. Nothing shall be apportioned to the deferred class until the preferred class has been exhausted, * * *."

The trial court heard the evidence in open court. A number of witnesses testified, including Allen's widow. Several letters were introduced and the court, after carefully considering the evidence and having the benefit of argument of counsel decided that the charge of desertion made against Mary, the surviving widow, had not been sustained and directed that the fund, after the payment of certain allowances, be paid to her.

We will not undertake to discuss all of the evidence. If the lower court was correct in its conclusion that Mary did not desert her husband, then section 5123 would have no application and the other questions raised by counsel for Mary Mitchell became unimportant and unnecessary to be decided.

In considering this appeal we must give to the judg-

ment of the lower court the weight to which it is entitled. The rule is clearly stated in *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 157 S. E. 414. It was held in that case that when a case is submitted to the court without the intervention of a jury, on appeal this court has no authority under section 6363 of the Code to interfere with the judgment of the court below unless it appears from the evidence to be plainly wrong, or without evidence to support it.

To sustain the charge of desertion against Mary the administratrix relies in the main upon a certain letter written by her to Allen on May 25, 1934, and upon certain parts of her testimony which tend to show that Mary no longer loved Allen. The letter was as follows:

"Washington, D. C.<br>"May 25, 1934.

"Allen

"I am going up to Louises tonight to that party and have a good time and forget you and everything. Of course I'm not going to drink or smoke because I can have just as nice a time without that. I'm going to stay all night and go to work in the morning. I'm just sick and tired of married life. And I don't love you anymore. So we might as well do something about it as it's no use in me ruining your life and mine. I appreciate every thing you've done for me and I don't care what you do any more. You go your way and I'll go mine. This is a fact as I mean every word of it. I guess we just weren't meant for each other that's all. I mean everything I told you last night. You don't have to bother about me any more. I make out allright. I just tired of everything. So do as you please from this day on.

"I remain—<br>"Mary."

After the receipt of this letter the parties lived together as man and wife. In fact counsel for the administratrix in the petition practically concede this. In any event, how-

ever, the evidence clearly shows that marital relations were not broken off at the time of the passing of the letter. The evidence is conclusive that Mary did not desert Allen but on the other hand it shows that Allen left Mary. The situation would have been quite different if Mary had left Allen at the time she wrote the letter. In that event the letter would have disclosed her intent to desert and her actual departure would have completed her desertion. But such was not the case.

The letter and the testimony of Mary which is relied upon discloses that Mary did not love Allen; that she was "tired of married life;" that she was willing to separate from him; that she could take care of herself and that she was willing to release him from his marital obligations. All of this however is not sufficient to establish desertion. The judge of the trial court aptly remarked during the trial that "married couples frequently go on living together through life when they do not love each other." The fact that they do not love each other is not just cause for severing the marriage relation in Virginia. It is not necessary to refer to the evidence of Mary and her witnesses. It shows that she did not desert her husband.

After giving the judgment of the trial court the weight to which it is entitled and after carefully considering the evidence, we are of the opinion that section 5123 has no application; that the fund passes under section 5787 to the surviving widow; and that the judgment should be sustained.

*Affirmed.*